FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 AUG 21 PM 2:58

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| RONALD DOOLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action: CV-01-B-454-S |
| | ) |
| AUTONATION USA CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**ENTERED**

AUG 21 2002

### MEMORANDUM OPINION[1]

Before the court are the Motion for Summary Judgment filed by Defendant AutoNation USA Corporation[2] ("defendant" or "AutoNation") and the Motion to Strike Defendant's Reply Brief and Additional Evidentiary Submission filed by Plaintiff Ronald Dooley ("plaintiff" or "Dooley"). Dooley alleges that AutoNation discriminated against him in violation of the Alabama Age Discrimination Act, 1975 Ala. Code §§ 25-1-20 *et. seq.*, by terminating his

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court. Although the court has made minor changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997). This is an important opinion. Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome. Counsel drafted the opinion according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

[2] On January 8, 2002, the parties filed stipulated pleadings substituting AutoNation USA Corporation for the previously-named Defendants Republic Services, Inc. and AutoNation, Inc. The parties are in agreement that AutoNation USA Corporation is the proper party in interest, being the former employer of plaintiff. Without objection from plaintiff, the court therefore treats the motion for summary judgment originally filed by the previously-named defendants as that of the sole remaining defendant, AutoNation USA Corporation. Pursuant to the parties' stipulation, plaintiff's claims against the previously-named defendants have been dismissed with prejudice.

employment. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted and plaintiff's motion is due to be denied.

### I. FACTUAL SUMMARY

#### A.   AutoNation USA's Megastores

In 1996, AutoNation developed a chain of "Megastores" for the sale of previously owned vehicles reconditioned to be like new. (Aff. of Paxton Gagnet ("Gagnet Aff.") ¶ 3, attached as Ex. A to Def.'s Mot. for Summ. J. ("Def. MSJ").) To support this project, AutoNation built stand-alone reconditioning ("re-con") centers. (*Id.*) Each re-con center serviced multiple Megastores, which were grouped in districts. (*Id.*) AutoNation employed a nationwide network of independent wholesale buyers who, based on a published matrix, purchased vehicles at auction and then shipped them to a re-con center. (*Id.* at ¶¶ 3, 4.) After the vehicle was reconditioned, it was delivered to a district Megastore. (*Id.* at ¶ 3.) AutoNation's use of stand-alone re-con centers was an expensive strategy that hindered AutoNation's ability to be competitive in the used car market. (*Id.*) In addition, the Megastores were built to be too large for the markets they served, and turned out to be unprofitable. (*Id.*)

#### B.   Plaintiff's Employment as a Buyer

In October 1996, Dave Spurgeon and Chuck Rathert hired plaintiff[3] as a wholesale buyer. (Dep. of Ronald Dooley ("Dooley Dep.") at 119-20, attached as Ex. B to Def. MSJ.) AutoNation employed Rathert, Spurgeon, and Dooley in its Dallas District.[4] (*Id.* at 142, *see also* Aff. of Charles Rathert ("Rathert Aff.") ¶ 1, attached as Ex. C to Def. MSJ.) Rathert was the

---

[3] Plaintiff was born on October 23, 1937, making him sixty-four years old at the time he filed this lawsuit. (Compl. ¶ 5.)

[4] Plaintiff testified that, at the time of his hire, AutoNation USA's buying organization was referred to as "Courtesy Wholesale." (Dooley Dep. at 134-37.)

Area Re-Marketing Manager in charge of buyers for the Dallas District of the Wholesale Purchasing division of AutoNation, and Spurgeon was the Dallas District Buyer. (*Id.*) At this initial stage of his employment, although assigned to report to the Dallas District, plaintiff was permitted to purchase, according to published matrices, vehicles for Megastores throughout the nation. (Dooley Dep. at 140, 143.)

### C.  Restructuring of the Buying Organization and Plaintiff's Initial Termination

In the fall of 1997, defendant's management began to implement cost containment measures because of the unacceptable financial losses which were being incurred by the Megastores. (Gagnet Aff. ¶ 4.) In November 1997, over 200 reconditioning center employees were laid off. Also, in the Fall of 1997, measures were implemented to restructure Megastore buying operations and make the AutoNation's Buyers ("Buyers") more accountable for the condition and marketability of the vehicles they purchased.[5] (*Id.*)  With the implementation of these new restructuring and accountability measures, Buyers were assigned to purchase vehicles only for the Megastores or Districts to which they were directly accountable. (Dooley Dep. at 139-43; Gagnet Aff. ¶ 4.) Buyers who were not assigned to specific stores or districts were terminated. (Gagnet Aff. ¶ 4.)

Spurgeon and Rathert informed plaintiff that he had been transferred and would be a Buyer in the Atlanta, Georgia, area. (Dooley Dep. at 143.) That transfer never materialized, however, because the Vice President in charge of these Georgia stores, George Sutherlin, had already hired his son as the Buyer for that area. (Dooley Dep. at 143-46.) Because he could not find a position with a specific Megastore or group of stores, plaintiff was terminated on January 2, 1998. (Dooley Dep. at 149; Gagnet Aff. ¶ 5.)

---

[5] Previously, Buyers had been permitted to buy vehicles for sale nationwide, according to a published matrix, for Megastores throughout the nation. (Dooley Dep. at 140; Gagnet Aff. ¶ 4.)

- 3 -

### D. Plaintiff's Separation Agreement and Rehiring

When AutoNation initially terminated plaintiff, the company offered him a severance payment of four weeks' salary plus one week's pay for every year of service. (Dooley Dep. at 149.) As a condition to the severance payment, the plaintiff agreed to and executed a "Separation Agreement with Waiver and Release of Claims," generally releasing AutoNation USA Corporation, as well as its parent and affiliated corporations, from any and all claims which plaintiff had, might have had, or might have claimed to have, arising out of any acts, events, or transactions of his employment prior to January 9, 1998. (*Id.* at 149, 164-66, Ex. Nos. 3 & 4.) Through the efforts of Rathert, by the end of February 1998 plaintiff was rehired as a Buyer for AutoNation. (*Id.* at 150-52.) Plaintiff was assigned to the Grand Prairie, Texas Megastore, which was part of AutoNation's Dallas District. (*Id.*) Later, plaintiff was also asked to purchase vehicles for other Megastores within the Dallas District. (Dooley Dep. at 152-53.)

### E. Changes in the Duties of the Buyers

Despite AutoNation's attempts to contain costs in 1997, it continued to experience financial difficulties in 1998. (Gagnet Aff. ¶ 5.) In March 1998, approximately 600 re-con center employees were laid off. (*Id.*) Marshall Chasron, the Senior Vice President for Operations for AutoNation USA Megastores, implemented an inventory quality control measure requiring all Buyers to "walk the inventory" at the stores to which they were assigned. (*Id.* ¶ 6; Rathert Aff. ¶ 2.) This meant that Buyers were required to regularly inspect the condition of all used vehicles at the stores for which they were purchasing vehicles to decide what additional cars needed to be purchased and to evaluate which cars were selling and which were not. (Gagnet Aff. ¶ 6; Rathert Aff. ¶ 2.) The Buyers were also required to inspect, with their store managers, trade-ins to decide whether they should be sold retail or wholesale. (*Id.*) Chasron's policy was implemented to hold Buyers accountable for their purchases and to make sure they

bought specifically for their stores' individual needs. (Gagnet Aff. ¶ 6.) These new responsibilities required the Buyers, regardless of where they lived, to be on-site at their stores several times per week.[6] (*Id.*; Rathert Aff. ¶ 2.)

### F. The Need for Plaintiff to Relocate to the Dallas Area

When Chasron decided that Buyers should be required to inspect the inventories at the Megastores for which they were buying cars, plaintiff was living in Birmingham, Alabama. (Rathert Aff. ¶ 4.) Prior to the change in the responsibilities of Buyers, plaintiff had been allowed to perform his duties from Birmingham, Alabama by going to local auctions and having the cars he purchased shipped to Texas. (*Id.*) After the policy was implemented, however, it became necessary for him to fly to Dallas and travel to the Dallas area stores to perform his duties as directed by Chasron. (*Id.*) Although Rathert instructed plaintiff to do this at least twice a week, plaintiff actually did this only twice over a period of several months after the policy was implemented. (*Id.*) It was impractical, as well as very expensive, for plaintiff to monitor inventories at stores in the Dallas, Texas, area from Birmingham, Alabama, more than 600 miles away.[7] (*Id.*)

### G. Plaintiff's Refusal to Relocate and Resulting Termination

In August 1998, the store managers of the Dallas District decided that the Dallas stores would no longer employ Buyers who did not live within a reasonable commuting distance from

---

[6] When Chasron's new policy was implemented, Spurgeon was District Buyer for AutoNation's Megastore District in Dallas, Texas. (Rathert Aff. ¶ 3.) In April 1998, Spurgeon moved to Muscle Shoals, Alabama. Although he attempted to continue his employment with AutoNation as a Buyer, AutoNation terminated him in late May 1998 because he was not located in geographical proximity to an AutoNation Megastore and, therefore, could not comply with Chasron's policy. (*Id.*)

[7] At the request of defendant, the court takes judicial notice, and plaintiff does not dispute, that Dallas is over 600 miles from Birmingham.

the Megastores to which they were assigned. (Gagnet Aff. ¶ 6; Rathert Aff. ¶ 5.) This decision affected at least three Buyers who reported to Rathert, including plaintiff. One of these three Buyers decided to move closer to his store, and another decided to resign and take a different job where he lived. (Rathert Aff. ¶ 5.) Plaintiff was unwilling to move from Birmingham, Alabama, to the Dallas, Texas, area and, therefore, was terminated effective November 1, 1998, receiving no compensation after October 1998. (*Id.*; Dooley Dep. at 185.) According to plaintiff, he learned that he had been terminated when he received a letter from AutoNation on January 5, 1999, offering a severance package and confirming that his termination had been effective November 1, 1998. (Dooley Dep. at 214-215, Ex. 12.)

### H.   Rathert's Voluntary Efforts to Find Another Opportunity for Plaintiff

In the Fall of 1998, Rathert, plaintiff's immediate supervisor, attempted to find a position for plaintiff so he could remain employed with AutoNation. (Rathert Aff. ¶ 6.) Because each Megastore was operated autonomously, Rathert contacted the managers of several stores outside of the Dallas District to find a store manager who would be willing to permit plaintiff to buy for the store even though he lived in Birmingham, Alabama. (*Id.* at ¶ 7.) Rathert's efforts were unsuccessful, however, because all the store managers wanted their Buyers to live near the stores in order to comply with Chasron's requirement that Buyers "walk the inventory." (*Id.*) All of the stores Rathert contacted were either laying off Buyers or considering doing so because of adverse economic conditions. (*Id.*)

### I.   The Shutdown of All AutoNation Megastores in 1999

The economic condition of the Megastores was such in the Fall of 1998 that no additional used cars needed to be purchased during the months of September and October. (Rathert Aff. ¶ 10.) Adverse economic conditions continued through 1998 and 1999 and on December 13,

1999, AutoNation decided to shut down all Megastores and lay off all employees, including Buyers and Managers. (*Id.* at ¶¶ 9, 10.)

## II. DISCUSSION

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986.) The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; see Fed.R.Civ.P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

In deciding a motion for summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury. *Id.* Therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. The

nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### B. Statute of Limitations Defense

Plaintiff alleges that defendant terminated his employment in violation of the Alabama Age Discrimination In Employment Act ("AADEA"), 1975 Ala. Code §§ 25-1-20 *et seq.* (Pl.'s Amended Compl.) Defendant contends that plaintiff's claim is time-barred by the statute of limitations. (Def.'s Br. at 11-12.) Although the AADEA is silent as to the limitations period applicable to plaintiff's claim, the statutory period of limitations for plaintiff's claim is two years. *See* 1975 Ala. Code §§ 6-2-38(l) ("actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years") and (n) ("actions commenced to recover damages for injury to the person . . . wherein a principal or master is sought to be held liable . . . under the doctrine of respondeat superior must be brought within two years"). Both federal and Alabama state courts have imposed the two year limitations period on actions when the claims are based on either common law employment discrimination principles or statutes which are silent as to the applicable limitations period. *See e.g., Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 888 (Ala. 1995) (imposing the two year limitations period of Ala. Code §§ 6-2-38(l) and (n) to sexual harassment action); *Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992) (holding that the statute of limitations for § 1983 civil rights actions is based on Alabama's personal injury statute, which is two years); *Malone v. K-Mart Corp*, 51 F. Supp. 2d 1287, 1304 (M.D. Ala. 1999) ("The statute of limitations for claims brought pursuant to 42 U.S.C. § 1981 is equal to the state statute of limitations for personal injury claims, which in Alabama is two years."); *Madison v. B.P. Oil*, 928 F. Supp. 1132, 1138 (S.D. Ala. 1996) ("There is no dispute that the two year statute of limitations period of Ala. Code § 6-2-38(l) applies to § 1981 actions in Alabama.").

The statute of limitations defense is an affirmative defense that defendant has the initial burden to allege and prove. *Parrish v. City of Opp, Ala.*, 898 F. Supp. 839, 841 (M.D. Ala. 1995).

Plaintiff alleges that his termination, which according to defendant was effective November 1, 1998, was unlawful. (Rathert Aff. ¶ 5.) Defendant argues that because plaintiff knew or should have known in December 1998 that his employment was terminated effective November 1, 1998, plaintiff was required to file his action on or before November 1, 2000. (Def's Br. at 12; Def.'s Reply Br. at 8-10.) Plaintiff actually filed his complaint in the Circuit Court of Jefferson County on January 2, 2001, more than two months later. (*See* Compl.) Therefore, defendant contends that plaintiff's action is untimely and that its motion for summary judgment should be granted on that basis. (*Id.*) Plaintiff denies that he became aware of his termination until January 5, 1999, when he received written notice that he had been terminated effective November 1, 1998. (Dooley Dec. ¶¶ 9-10.) Because the court finds an issue of material fact as to the defendant's statute of limitations defense, summary judgment will not be granted on this basis.

C.  **Plaintiff's Age Discrimination Claims**

Plaintiff alleges that he was terminated based on his age in violation of the AADEA. "[B]ecause it is self-evident that the AADEA's purpose and prohibitions are like the [Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634], to promote employment of older persons based on their ability rather than age and to prohibit arbitrary age discrimination in employment, it follows that [the ADEA's] principles should govern in AADEA cases as well." *Bonham v. Regions Mortgage, Inc.*, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001). The

same order and allocation of proof in cases under Title VII[8] govern suits under the ADEA. *Id.* at 1321; *see also Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).

Because plaintiff offers no direct evidence of discrimination, he must prove his case through circumstantial evidence. In *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1973), the Supreme Court established the "basic allocation of burdens and order of presentation of proof" in disparate treatment actions alleging discriminatory treatment, such as here:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252-53 (citations omitted). At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to judgment as a matter of law on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

1.  **Prima Facie Case.**

To defeat summary judgment, plaintiff has the initial burden of proving a prima facie case of age discrimination by a preponderance of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff fails to establish a prima facie case, an inference of

---

[8] *See* 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17.

discrimination does not arise and summary judgment for the employer is proper. *Jett v. Drummond Co., Inc.*, 51 F.E.P. 221 (N.D. Ala. 1989). To establish a prima facie case of age discrimination based on circumstantial evidence, plaintiff must prove that: (1) he was a member of the protected age group and was adversely affected by an employment decision; (2) he was qualified for his current position or to assume another position at the time of discharge; and (3) there is evidence from which a reasonable fact finder could conclude that the employer intended to discriminate on the basis of age in making its employment decision. *Mitchell v. USBI Co.*, 186 F.3d 1352, 1354 (11th Cir. 1999). In an action brought pursuant to the ADEA, the employer can prevail on summary judgment by showing that no genuine issue of material fact exists as to one or more elements of the plaintiff's prima facie case. *See Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1387 (11th Cir. 1983). AutoNation does not dispute that plaintiff, who was born on October 23, 1937, is a member of the protected group and that, having been discharged, he was subjected to an adverse employment action. Nor does defendant dispute that plaintiff was an experienced buyer of vehicles. AutoNation does contend, however, that plaintiff has not come forward with evidence from which a reasonable fact finder could conclude that it intended to discriminate on the basis of age in deciding to terminate the plaintiff, and that plaintiff therefore cannot prove a prima facie case.

Plaintiff argues that his prima facie case of age discrimination is established by statements of Robert Marco, Betty Goins and Chuck Papp, as well as his own. (*See* Dooley Decl., Marco Decl., Goins Decl., Papp Decl., attached as Exs. 1, 2, 3, and 4 to Pl.'s Evidentiary Submission In Opp'n To Summ. J. ("Pl. Evid. Sub.").) He argues that AutoNation "targeted individuals for employment [as Buyers] who had been in the industry longer than anyone else [and] who were very experienced and established car buyers." (Pl.'s Br. at 6.) According to plaintiff, this resulted in them "hiring the oldest individuals (by age) in the job market," such that

"[t]he majority of the Buyers" were "well over the age of 42 years." (*Id.*) The Buyers were "the largest group of older employees (42 years old and above) working for the company at the time." (*Id.*) Plaintiff contends that AutoNation made changes in its policies which applied only to the Buyers as a group, and because these policies adversely affected the Buyers, the termination of the plaintiff must have been motivated by age discrimination. (*Id.* at 7.) Because he claims that AutoNation's policies adversely affected Buyers as a group, whom, he asserts, tended to be older workers, plaintiff's claim is one of disparate impact rather than disparate treatment.[9] Although the U. S. Supreme Court has never decided whether a disparate impact theory of liability is available under the ADEA, *see Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993), the Eleventh Circuit has held that disparate impact claims may not be brought under the ADEA, *Adams v. Fla. Power Co.*, 255 F.3d 1322, 1326 (11th Cir. 2001). Insomuch as the Alabama Age Discrimination in Employment Act ("AADEA") tracks the ADEA in its interpretation, this court follows the law of the Eleventh Circuit and holds that disparate impact claims may not be brought under the AADEA. *See Adams*, 255 F.3d at 1326.

Even if a disparate impact claim were viable in the age discrimination context, plaintiff's evidence is not sufficient to establish such a claim here. Plaintiff's argument fails to take into account that the duties of AutoNation's Buyers were different from those of other Megastore employees, and that changes in compensation and other policies for the Buyers were designed to

---

[9] Disparate treatment occurs when an employer treats some people less favorably than others because of their race, color, religion or other protected characteristics; this claim requires proof of discriminatory motive. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Disparate impact involves employment practices that are facially neutral but in effect treat one group less favorably; this claim does not require proof of discriminatory motive. *Id.*

enhance their accountability for the purchases they made for the business. In addition, plaintiff's assertions concerning the age of Buyers as compared with AutoNation employees amount to nothing more than speculation because plaintiff offered no competent evidence of the age of any AutoNation employee other than himself. "Anecdotal information is no substitute for meaningful statistical analysis," *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir. 1994) (affirming trial court's finding that plaintiff presented insufficient statistical evidence of discriminatory intent where he offered only that BP has no black dealers in predominantly white areas of north Atlanta without evidence of how many blacks applicants were rejected or evidence of the success rate of equally qualified white applicants), and "[s]tatistics without an analytical foundation are 'virtually meaningless,'" *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 963 (11th Cir. 1997) (finding evidence of only three black supervisory employees in history of employer's operation insufficient to prove discriminatory intent). Based on the law of this Circuit, plaintiff's attempt to prove his prima facie case on a disparate impact claim fails.

To prove a prima facie case, plaintiff relies heavily upon statements by former AutoNation employees Marco, Goins, and Papp. (*See* Marco Decl., Goins Decl., Papp Decl.) However, all of these employees were terminated before or during January 1998, prior to the time AutoNation rehired plaintiff in February 1998. (*See* Marco Decl. ¶3; Goins Decl. ¶3; Papp Decl. ¶3.) Thus, any knowledge of AutoNation's practices held by Marco, Goins and Papp is relevant only to plaintiff's initial period of employment which ended January 2, 1998. None of these witnesses were in a position to observe the events and circumstances which occurred during 1998 and led to plaintiff's second termination on November 1, 1998. Plaintiff does not dispute that on January 9, 1998, he executed a release for consideration of all claims he might have against defendant pertaining to his first period of employment.

Plaintiff also relies upon statements that he attributes to Spurgeon, a former AutoNation manager who was terminated in May of 1998. (Pl.'s Br. at 14-15.) However, Spurgeon was terminated prior to the events leading to plaintiff's termination which began in August 1998. (Rathert Aff. ¶5.) Plaintiff testified that Spurgeon expressed to plaintiff the opinion that AutoNation was trying to get rid of Spurgeon and generally trying to replace older Buyers with younger Buyers. (Dooley Dep. at 251-52.) Plaintiff does not state any personal knowledge or other factual basis for Spurgeon's opinion. In fact, Spurgeon provided a sworn declaration stating that he had no knowledge of plaintiff being rehired by AutoNation in 1998 or of plaintiff's subsequent termination in 1998. (Spurgeon Decl. ¶ 3, attached as Ex. C to Def.'s Supplemental Submission ("Def.'s Supp. Sub.").) Furthermore, Spurgeon was not a decisionmaker in this case, and plaintiff's attribution of this statement to him in these circumstances is inadmissible. *See Mitchell v. USBI Company*, 186 F.3d 1352, 1355 (11th Cir. 1999) (holding that comments of non-decisionmaker do not raise inference of discrimination); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455-57 (11th Cir. 1997) (finding that statements by supervisors to subordinates that higher company officials were "talking about getting rid of the older employees" were not made within the scope of the supervisors' authority and were inadmissible hearsay).

To support his position, plaintiff asserts that he observed that some unidentified Buyers were replaced by "younger employees" and that one Buyer, Sidney Wenn "was hired in one of the areas where I could have worked." (Dooley Dep. at 211, 212, 252, 287; Pl.'s Br. at 2.) Plaintiff provides no specifics, however, upon which the court could determine whether the hiring of Wenn, or any of the unidentified "younger Buyers" to whom he refers, would support his claim of disparate treatment. Plaintiff does not say when Wenn was hired, whether the Buyer already lived in the Atlanta area or moved to Atlanta from another location, or whether Wenn's

qualifications were comparable to plaintiff's. Dooley does not dispute that he refused to move to Dallas. Moreover, Rathert's unrebutted affidavit shows that he attempted to find a Megastore willing to permit the plaintiff to buy cars *while living in Birmingham*. (Rathert Aff. ¶ 6-8.) No evidence suggests that AutoNation management was aware that plaintiff was willing to move to Atlanta, especially when he refused to move to Dallas where he already had a job. Plaintiff does not address undisputed evidence that each of the AutoNation's Districts and Megastores hired employees independently of one another. Finally, plaintiff does not present evidence that the decisionmaker in the Dallas District who terminated plaintiff had knowledge of an opening for which plaintiff might be eligible in any of the Megastores outside of that district. Plaintiff has, therefore, failed to present evidence that he was treated differently from any similarly situated younger Buyer. *See Holifield v. Reno*, 115 F.3d 1555, 1562-63 (11th Cir. 1997) (requiring plaintiff to prove that comparator is "similarly situated in all relevant respects"); *Malladi v. Brown*, 987 F. Supp. 893, 909 (M.D. Ala. 1997) (holding that comparators must have "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

The court concludes that plaintiff has not presented evidence sufficient to prove a prima facie case of age discrimination under a disparate treatment theory.

### 2. Plaintiff's Claim That The Legitimate Nondiscriminatory Reasons Proferred by Defendant Are Pretextual.

Even assuming that plaintiff has established his prima facie case, AutoNation has satisfied its burden of producing evidence of a legitimate, nondiscriminatory reason for the plaintiff's termination. AutoNation's financial circumstances required measures to increase the accountability of Buyers, including a requirement that all Buyers be expected to "walk the

inventory" several times weekly at the local stores to which they were assigned. As such, the Dallas District Megastores determined in August 1998 that all Buyers should be required to live near their stores in order to comply with this requirement. Because plaintiff was unwilling to comply with this requirement by relocating to the Dallas area, AutoNation terminated him. Plaintiff does not dispute that he was unwilling to move to the Dallas area. Rather, in an effort to meet his burden of proving pretext, plaintiff offers declarations from Marco, Goins, and Papp expressing their opinions, without explanation, that AutoNation's "walk the inventory" requirement was not a sound policy. Neither plaintiff nor any of these witnesses have testified to any facts showing that AutoNation's reasons for terminating plaintiff are false or pretextual.

Plaintiff cannot survive summary judgment by substituting his own opinions regarding company policies for that of AutoNation. The Eleventh Circuit consistently applies this rule:

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

*Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citing *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir. 2000)). *See also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (stating that federal courts do not sit as a "super-personnel department" re-examining an entity's business decisions); *Hellums v. Webster Indus., Inc.*, 97 F. Supp. 2d 1287, 1296 (M.D. Ala. 2000) (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978) and stating that "[i]t is not appropriate for the court [ ] to fetter management's discretion by substituting [its] own judgment as to proper [employment] practices" (brackets in original)).

Plaintiff has not rebutted defendant's legitimate, non-discriminatory reason for terminating plaintiff. According to defendant, AutoNation's "walk the inventory" requirement

was necessary "so that [they] would have Buyers in the local market to understand the market, . . . know what the needs of the stores were, to understand the seasonality, to have conversations with the management and general manager on a daily or three time [sic] a week basis, walk the inventory and have clear communication as opposed to the previous structure where a [B]uyer would buy a vehicle, put it in a store and have no accountability thereafter." (Gagnet Dep. at 19-20, attached as Ex. A of Def.'s Supp. Sub.) AutoNation offered that it implemented the policy because Buyer accountability, "constant communication", and local market knowledge was essential so that, for example, if the store had just traded for "two or three Tauruses," they would not have a Buyer "out somewhere buying four or five more because he didn't know what we had in inventory at that store or didn't get direction from the general manager on the game plan for the inventory in that store." *Id*. at 50-51, 54. Plaintiff does not present evidence sufficient to create a jury question that defendants' proffered reason for his termination is pretext. The wisdom of defendant's business decision is not a matter for the court to question, and, therefore, defendant's Motion for Summary Judgment is due to be granted.

### D.    **Plaintiff's Motion to Strike**

On January 11, 2002, defendant filed a supplemental submission in support of the motion for summary judgment. On January 14, 2002, plaintiff filed a Motion to Strike Defendant's Reply Brief and Additional Evidentiary Submission, arguing that he would be "severely prejudiced" because he would not be afforded the opportunity to respond to and rebut the additional evidence submitted by defendant. The court disagrees. The court finds that plaintiff is not prejudiced by defendant's supplemental submission with its reply brief, which includes excerpts from the deposition of Paxton Gagnet, a letter dated December 5, 2001, to plaintiff's counsel, the Declaration of Dave Spurgeon, and excerpts from the deposition of Ronald Dooley with attached exhibits. The Gagnet Deposition was not taken until December 13, 2001, after

defendant's summary judgment motion had been filed, and excerpts from the deposition could not have been submitted with the motion itself. Furthermore, the deposition was in plaintiff's possession before he submitted his brief in opposition. Defense counsel's letter to plaintiff's counsel dated December 5, 2001, merely confirms the parties' stipulation to amend the pleadings which was later filed with the court. Excerpts cited from plaintiff's deposition were duplicates of materials previously filed and served with the evidentiary submission filed by defendant with its original motion. The Spurgeon declaration was cited by defendant in its reply brief in support of a point also established through the Affidavit of Charles Rathert, submitted with defendant's original motion for summary judgment. Moreover, at oral argument the court offered plaintiff's counsel the opportunity to submit after the hearing any additional materials he deemed necessary to oppose, rebut, or otherwise respond to the supplemental materials submitted by defendant with its reply brief. Counsel for plaintiff declined the offer, stating that the plaintiff had nothing further to submit.

      Plaintiff's motion to strike is due to be denied.

## III.  CONCLUSION

Based on the foregoing, the court concludes that defendant's motion for summary judgment is due to be granted on the merits of plaintiff's claim of age discrimination under the AADEA, and that plaintiff's motion to strike defendant's reply brief and additional evidentiary submission is due to be denied.  An order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 21st day of August, 2002.

                                                         *Sharon Lovelace Blackburn*
                                              **SHARON LOVELACE BLACKBURN**
                                              United States District Judge